[No. 48236–5.   En Banc.   November 4, 1982.]

CAROLEE BERNETHY, *as Personal Representative and Guardian ad Litem, Appellant,* v. WALT FAILOR'S, INC., ET AL, *Respondents.*

*Paul L. Stritmatter* and *Stritmatter & Stritmatter,* for appellant.

*Charette, Schumacher, Brown, Edwards & Lewis,* by *Thomas A. Brown,* for respondents.

DIMMICK, J.—Appellant, personal representative of the estate of Phoebe Fleming, commenced this wrongful death action against respondents, owners of a gun shop, for the benefit of decedent's three minor children. The trial court granted respondents' motion for summary judgment and entered an order dismissing the action. Appellant appealed to the Court of Appeals and that court certified the follow-

ing question to us:

> Did the trial court err in granting respondents' motion for summary judgment dismissing this wrongful death action, brought on the theory that respondents had negligently furnished a firearm to an intoxicated person who then shot and killed appellant's decedent?

We conclude that the court did err and we remand this matter for trial.

Robert Fleming shot and killed his estranged wife, Phoebe, on August 11, 1978. The events preceding such action give rise to the instant case.

On August 10, at 6:30 p.m., Robert Fleming began drinking whiskey and continued until the bar closed. He then went home and consumed a six–pack of beer. At 5:15 a.m. on August 11 he drove into town and began drinking again. He drank continuously until about 6:30 p.m. except for an hour when he had passed out. A woman with him at the bar declared that there was no question that Fleming was intoxicated.

Fleming left his wife and friends at the bar at about 6:30 p.m. and walked to Walt Failor's gun shop. Walt Failor, owner of the shop, was working as a salesperson. When Fleming entered the store he asked to see a 30.30 rifle for his son. According to Failor the customer displayed no symptoms of intoxication except a slight odor of alcohol. Another customer in the store stated in an affidavit that he saw no evidence that Fleming was drunk. Fleming's affidavit, however, indicates that he remembers wetting his pants before entering the store, falling and staggering as he walked into the store and having to rest his arms on the counter to support himself.

After inspecting the rifle Fleming agreed to buy it and handed Failor a credit card. Failor laid the gun and shells on the counter next to Fleming. Failor began to fill out the necessary firearms transaction record and then turned to check Fleming's credit by phone when Fleming picked up the gun and ammunition and walked out. Failor followed him requesting payment. Fleming told him to leave and

threatened him with the gun. Failor followed Fleming to the tavern where the killing took place. Fleming's blood alcohol was .23 percent when he was arrested immediately after the shooting.

■ A cause of action founded in negligence requires that a plaintiff establish that:

■ there is a statutory or common–law rule that imposes a *duty* upon defendant to refrain from the complained–of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff.

*Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). *Accord, Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981).

■ Respondents urge, as a matter of law, that they owed no duty to Phoebe Fleming and, if they did, that duty was not violated. Finally, they argue that the alleged breach was not the proximate cause of her death. The trial court in dismissing the action did not specify the basis for its decision. Accordingly, we must discuss all of respondents' contentions in reviewing the trial court's order. In doing so we are mindful of the well established rule that a court must consider the material evidence and all reasonable inferences therefrom in favor of the nonmoving party in ruling on a motion for summary judgment. If reasonable persons might reach a different conclusion, the motion should be denied. *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 256–57, 616 P.2d 644 (1980); *Millikan v. Board of Directors*, 93 Wn.2d 522, 532, 611 P.2d 414 (1980).

■ Duty may be predicated on violation of a statute or common law principles of negligence. Washington does not have a statute specifically prohibiting the sale of rifles to intoxicated persons. It is illegal, however, to deliver a pistol to certain incompetent persons. RCW 9.41.080 provides:

No person shall deliver a pistol to any person under the age of twenty–one or to one who he has reasonable

cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind.

This statute, at a minimum, reflects a strong public policy in our state that certain people should not be provided with dangerous weapons.

Common law principles of negligence provide that duty is a question addressed to the court. In deciding questions of duty we evaluate public policy considerations. *See Wells v. Vancouver,* 77 Wn.2d 800, 809–10, 467 P.2d 292 (1970) (Finley, J., concurring), quoted in *Haslund v. Seattle,* 86 Wn.2d 607, 612 n.2, 547 P.2d 1221 (1976); W. Prosser, *Torts* § 53, at 325–26 (4th ed. 1971). Once this initial determination of legal duty is made, the jury's function is to decide the foreseeable range of danger thus limiting the scope of that duty. *See Rikstad v. Holmberg, supra; Wells v. Vancouver, supra.*

In weighing the policy considerations, we hold that the duty owed by respondent is best summarized by Restatement (Second) of Torts § 390 (1965), which we now adopt:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

The basis for our imposing this general duty is that one should not furnish a dangerous instrumentality such as a gun to an incompetent. Most of the case law relates to gun sales to children, *see* Annot., 4 A.L.R.4th 331 (1981), or entrusting an automobile to an intoxicated person. The principle of section 390, however, applies equally well to one who is incompetent due to intoxication. *See* Holzer, *Liability to the Injured Third Party for Negligent Entrustment of a Firearm,* 59 Chi. B. Rec. 346 (1978). Additionally, we have previously recognized the analogous

cause of action for the negligent entrustment of a motor vehicle to an intoxicated person. *Jones v. Harris,* 122 Wash. 69, 210 P. 22 (1922); *Mitchell v. Churches,* 119 Wash. 547, 206 P. 6 (1922). In *Mitchell,* this court stated at pages 552–53:

> We consider it not only common sense, but common law and justice, that one cannot let or loan to another, knowing that other to be reckless and incompetent, and in such a condition that he would be reckless and incompetent, an instrumentality which may be a very dangerous one in charge of such a person.

Accordingly, viewing the evidence in a light most favorable to appellant, we conclude that respondents may be subject to liability under the general duty imposed by Restatement (Second) of Torts § 390. The jury must decide whether the injury fell within the ambit of that duty.

Respondents contend that regardless of the above principles they owed no duty because Fleming's actions in killing his wife were criminal. We have unmistakably rejected this argument as a general proposition. This court in *McLeod v. Grant Cy. Sch. Dist. 128,* 42 Wn.2d 316, 321, 255 P.2d 360 (1953) held:

> Whether or not an intervening act is criminal in nature, is a fact to be considered in determining whether such act was reasonably foreseeable. But intervening criminal acts may be found to be foreseeable, and if so found, actionable negligence may be predicated thereon.

(Citations omitted.)

Respondents assert that even if they owed a duty, they did not breach it because Fleming actually stole the gun. Failor had already agreed to sell the gun to Fleming and the transaction was practically completed. In addition, Failor left the gun and ammunition on the counter within Fleming's direct reach. We conclude that under these facts reasonable minds could differ as to whether respondents breached their duty under Restatement (Second) of Torts § 390.

■■ Respondents' final contention is that Failor's fur-

nishing the gun to Fleming was not the proximate cause of Phoebe Fleming's death. A finding of proximate cause is premised upon proof of cause in fact as well as a legal determination that liability should exist. *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974). Proximate cause is defined as a cause which in a natural and continuous sequence, unbroken by a new, independent cause, produces the event, and without which that event would not have occurred. *Stoneman v. Wick Constr. Co.,* 55 Wn.2d 639, 643, 349 P.2d 215 (1960).

We have consistently held that:

> [T]he question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court.

(Citations omitted.) *Mathers v. Stephens,* 22 Wn.2d 364, 370, 156 P.2d 227 (1945). *Bordynoski v. Bergner,* 97 Wn.2d 335, 644 P.2d 1173 (1982).

The evidence viewed in a light most favorable to appellant indicates that Failor placed a gun and ammunition in the hands of a visibly intoxicated person who immediately returned to the tavern one–half block away and shot decedent. The facts herein are disputed and the inferences to be drawn from them may vary. Accordingly, it is for a jury to decide whether Failor's actions were the proximate cause of Phoebe's death.

In sum, we conclude that the trial court erred in dismissing appellant's action. We remand this matter, thus allowing appellant to present her case consistent with this opinion.

BRACHTENBACH, C.J., STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied December 3, 1982.